UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOELLEN MARY CROSSETT,

                Plaintiff,                                       Hon. Janet T. Neff

v.                                                Case No. 1:18-cv-543

EMMET COUNTY, et al.,

                Defendants.

_____/


**REPORT AND RECOMMENDATION**

        This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>.   (ECF No. 30).   Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this matter **terminated**.


**BACKGROUND**

        Plaintiff initiated the present action on May 14, 2018, against Emmet County and the following Emmet County officials: Sheriff Peter Wallin; Deputy Cody Wheat; Deputy Fuller Cowell; Deputy Wade Leist; Prosecutor James Linderman; Assistant Prosecutor Stuart Fenton; and Assistant Prosecutor Michael Schuitema.   (ECF No. 1).   The details of Plaintiff's various allegations are explored in detail herein.   Nevertheless, the following allegations contained in Plaintiff's complaint represent a broad outline of her allegations.

        In March and April 2015, Plaintiff communicated with various Emmet County officials to complain about objectionable police practices, specifically arrests and searches of Native Americans suspected of Marijuana-related offenses by the Straits Area Narcotics Enforcement Team (SANE). As part of her efforts, Plaintiff "called the sheriff several times."   On May 23, 2015, Plaintiff was

arrested for "swearing on the phone."   Plaintiff was subjected to excessive force during her arrest and denied medical treatment immediately thereafter.   Plaintiff was later charged with three counts of resisting and obstructing arising from her arrest.

During the course of defending Plaintiff against these various charges, Plaintiff's attorney indicated that Plaintiff would plead not guilty by reason of insanity.   In response, the trial court ordered Plaintiff to participate in a mental competency examination.   Plaintiff, however, did not agree with her attorney's strategy and refused to attend the scheduled competency hearings.   As a result, Plaintiff was later charged with contempt of court.   Following a jury trial, Plaintiff was convicted of all three counts of resisting and obstructing, but was later acquitted of "swearing on the phone."   Plaintiff was sentenced to serve nine months in jail.   During her incarceration, Plaintiff's requests for a soy-free diet and to treat herself using oregano oil were denied.

Plaintiff asserts twenty-four (24) claims in this matter: (1) violation of the right to free speech; (2) retaliation; (3) unlawful arrest (three counts); (4) unlawful imprisonment (4 counts); (5) malicious prosecution (4 counts); (6) use of excessive force; (7) failure to intervene; (8) deliberate indifference (two counts); (9) conspiracy; (10) illegal search; (11) violation of due process (four counts); and infliction of emotional damage.   Defendants now move for summary judgment.

## LEGAL STANDARDS

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."   *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).   Once the

moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."  *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient.  *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial."  *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof."  *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher

hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).   Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).   The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.   Thus, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

### I.          Defendant Emmet County

Invoking 42 U.S.C. § 1983, Plaintiff seeks to hold Emmet County liable for violating her rights.   Specifically, Plaintiff appears to contend that the violation of her rights was caused by Emmet County's failure to properly train Defendants.

Section 1983 is the means by which "persons" who violate the constitutional rights of others can be held accountable.   *See* 42 U.S.C. § 1983.   While "municipalities and other local governmental bodies" are considered "persons" under § 1983, Emmet County cannot be held liable under § 1983 solely because it employs a tortfeasor.   *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997).   To impose liability on Emmet County, Plaintiff must establish that she suffered a constitutional injury as a result of "official municipal policy." *Connick v. Thompson*, 563 U.S. 51, 60 (2011).   Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."   *Id.* at 61.   While a local

government's decision not to train its employees regarding their legal duty to avoid violating individual's rights "may rise to the level of an official governmental policy for purposes of § 1983," a municipality's culpability for a deprivation of rights "is at its most tenuous where a claim turns on a failure to train." *Ibid.*

To prevail on her claim, Plaintiff must demonstrate that the County's failure to train its employees constitutes "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Ibid.* Because liability, under § 1983, for failure to train constitutes a finding that a municipality "decided to violate the Constitution," the law imposes a "strict standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown v. Battle Creek Police Department*, 844 F.3d 556, 573 (6th Cir. 2016) (citation omitted). This standard can be satisfied in either of two ways: (1) by demonstrating there exists a pattern of similar constitutional violations by untrained employees, or (2) by demonstrating "a single violation of federal rights accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential" for constitutional violation. *Shadrick v. Hopkins County, Ky.*, 805 F.3d 724, 739 (6th Cir. 2015) (citation omitted).

Plaintiff has neither presented nor identified any evidence which satisfies this standard. Accordingly, the undersigned recommends that Defendant Emmet County is entitled to summary judgment.

## II.        Defendants Linderman, Fenton, and Schuitema

In her complaint, Plaintiff fails to distinguish against whom each of her various claims is asserted, instead asserting in each claim that "defendants" violated her rights. Moreover, the nature of her alleged claims against prosecuting attorneys Linderman, Fenton, and Schuitema is not apparent

-5-

from the factual allegations in her complaint.   During her deposition, however, Plaintiff conceded that the only basis for her claims against these defendants was that "they signed warrants."   (ECF No. 30-4 at PageID.405).

It is well understood that "state prosecutors are absolutely immune from civil liability when acting within the scope of their prosecutorial duties."   *Howell v. Sanders*, 668 F.3d 344, 349 (6th Cir. 2012) (citing *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976)).   The assessment of whether a prosecutor was acting within the scope of his duties and, therefore, entitled to immunity, turns on whether the prosecutor's actions were "intimately associated with the judicial phase of the criminal process" or whether instead the prosecutor was "merely giving legal advice or investigating." *Howell*, 668 F.3d at 349-50.

While a prosecutor is not entitled to immunity if she advises the police during the investigatory phase of the proceedings, she is entitled to immunity based on her "decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant."   *Howell*, 668 F.3d at 351.   Here, Plaintiff's claims against these Defendants are based on nothing more than their alleged decisions to authorize warrants for Plaintiff's arrest.   As to such claims, Defendants enjoy absolute immunity.   Plaintiff argues that Defendants are not entitled to immunity because there did not exist probable cause to arrest her.   This is not an accurate statement of the law.   *Id.* at 350 ("the existence or nonexistence of probable cause, however, is not determinative of whether absolute immunity applies").   As for Plaintiff's arguments that Defendants made false statements or otherwise acted improperly as part of their decision to issue the warrants in question, Plaintiff has presented absolutely no evidence to support such assertions.   Accordingly, the undersigned recommends that Defendants Linderman, Fenton, and Schuitema are entitled to summary judgment.

**III.**        **False Arrest and False Imprisonment**

While Plaintiff asserts separate claims for false arrest and false imprisonment, such claims are functionally indistinct, as both consider whether an individual was detained in the absence of probable cause. *See, e.g., Manuel v. City of Joliet, Illinois*, 137 S.Ct. 911, 917-20 (2017) (whether an individual is challenging his initial arrest or continued detention thereafter, the dispositive issue in both circumstances is the presence or absence of probable cause); *Wolgast v. Richards*, 389 Fed. Appx. 494, 501 (6th Cir., Aug. 9, 2010) (with respect to "Fourth Amendment false-imprisonment and unlawful-arrest claims[,] [t]he presence of probable cause would defeat each of these constitutional claims"). With respect to these various claims, Plaintiff alleges that her rights were violated on four separate occasions, each of which is examined separately below.

A.        May 23, 2015 Arrest and Subsequent Detention

Plaintiff alleges that on May 23, 2015, Defendants Cowell and Wheat arrived at her residence and arrested her "for swearing on the phone." (ECF No. 1 at PageID.87-92). Plaintiff further alleges that following her arrest she was unlawfully "confined in jail for two days when they had no probable cause to arrest her." (ECF No. 1 at PageID.108).

With respect to these claims, Plaintiff makes no factual assertions against Defendants Wallin or Leist. Likewise, in response to Defendants' motion, Plaintiff has neither presented nor identified evidence indicating that Defendants Wallin or Leist were involved in this incident. Accordingly, Defendants Wallin and Leist are entitled to summary judgment. *See Rodriguez v. City of Cleveland*, 439 Fed. Appx. 433, 457-58 (6th Cir., Aug. 26, 2011) (liability in a § 1983 action "must be based on active unconstitutional behavior and cannot be based upon a 'mere failure to act' or the

'mere right to control employees'"). Defendants Cowell and Wheat are also entitled to summary judgment, albeit for a different reason.

The Fourth Amendment prohibits unreasonable seizures. *See* U.S. Const. amend. IV. An arrest is reasonable for Fourth Amendment purposes if the arresting officer had probable cause to believe that a criminal offense has been committed. *See Graves v. Mahoning County*, 821 F.3d 772, 776 (6th Cir. 2016). To prevail on her unlawful arrest claim, therefore, Plaintiff must establish that Defendants Cowell and Wheat lacked probable cause to arrest her. *Ibid.*, *see also*, *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014). An arrest accomplished pursuant to a facially valid warrant defeats an unlawful arrest claim unless the officer knew that the arrest warrant was issued without probable cause. *Robertson*, 753 F.3d at 618.

Plaintiff was arrested pursuant to an arrest warrant which was issued by a magistrate judge on May 19, 2015. (ECF No. 30-5 at PageID.432). The warrant to arrest Plaintiff was issued pursuant to a misdemeanor complaint charging Plaintiff with malicious use of telecommunications services in violation of Michigan Compiled Laws § 750.540e. (ECF No. 30-5 at PageID.431). Plaintiff does not allege that the arrest warrant was facially invalid, but instead argues that there did not exist probable cause to arrest her. This argument fails for two reasons. First, there did exist probable cause to arrest Plaintiff and, second, even if the Court assumes that probable cause was lacking, Plaintiff has presented no evidence that Defendants Cowell or Wheat knew such was the case.

Under Michigan law, it is a crime to maliciously use any service provided by a telecommunications provider with the intent to intimidate, threaten, or harass another person by "threatening physical harm or damage to any person." *See* Mich. Comp. Laws § 750.540e(1)(a). When assessing whether this provision has been violated, "the focus is on the [speaker]" not "the

listener's subjective perceptions."  *People v. Taravella*, 350 N.W.2d 780, 784 (Mich. Ct. App. 1984). Accordingly, it is "the malicious intent with which the transmission is made that establishes the criminality of the conduct."  *Ibid.*

Probable cause "is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that the accused is guilty of the offense charged."  *Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 362 (Mich Ct. App. 2003).  Probable cause "is a commonsense concept dealing with practical considerations of everyday life that must be viewed from the perspective of reasonable and prudent persons, not legal technicians."  *Id.* at 362-63.  The probable cause standard articulated under federal law is, practically speaking, indistinct.  *See, e.g., Rodriguez v. City of Cleveland*, 439 Fed. Appx. 433, 452 (6th Cir., Aug. 26, 2011) (probable cause "means facts and circumstances withing the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense").

Plaintiff was charged with violating Michigan law based on a series of telephone messages Plaintiff left for Defendant Wallin.  Defendants have submitted the recordings of these communications.  A review of such makes clear that probable cause existed to charge Plaintiff with malicious use of telecommunication services.  On April 9, 2015, Plaintiff left a voicemail message for Defendant Wallin in which she stated, in relevant part, the following:

> Pete Wallin, what in the fuck are you doing?  Why are you letting SANE arrest Native American women on the reservation when they're using a legal medicine. . .I warned you and I warned you.

(ECF No. 30, Exhibit C).

-9-

Later that day, Plaintiff left another voicemail message for Defendant Wallin regarding the alleged arrest of a Native American woman.   In this message, Plaintiff stated, in relevant part, the following:

> Why is SANE still in the county harassing Indians?. . .Shame on you for not serving and protecting Indians on our own reservation. . .I want to know why you're letting that happen.   Your job is to serve and protect me.

(ECF No. 30, Exhibit C).

On May 1, 2015, Plaintiff again left a voicemail message for Defendant Wallin regarding the arrest of two of Plaintiff's neighbors.   In this message, Plaintiff stated, in relevant part, the following:

> If you guys come to my house, be prepared.   Do you understand me? I will do what it takes to preserve my property.   If your fucking SANE officers come to my house, they can be in peril.   Do you understand me?. . .If your cock-sucking police fucks come to my house, they better be prepared. . .If you come to my house you will be in fucking peril. Understand me you cocksucker.

(ECF No. 30, Exhibit C).

While certain aspects of Plaintiff's voicemail messages concern legitimate matters of public concern, a reasonable and prudent person could nevertheless readily conclude that Plaintiff maliciously used a communication device with the intent to threaten physical harm or damage to others.   Simply put, there existed probable cause to charge Plaintiff with malicious use of a telecommunications service and, therefore, probable cause to arrest Plaintiff on May 23, 2015. Likewise, Plaintiff's subsequent two day detention did not violate the Fourth Amendment. Accordingly, the undersigned recommends that Defendants Cowell and Wheat are entitled to summary judgment as to Plaintiff's false arrest and false imprisonment claims.

-10-

B.    January 13, 2016

With respect to this event, Plaintiff alleges the following.  On January 13, 2016, Plaintiff arrived at the Emmet County Courthouse to meet with her attorney prior to a scheduled court proceeding.  (ECF No. 1 at PageID.96-97).  Prior to the start of the proceeding in question, Plaintiff signed an unidentified document provided to her by her attorney.  (ECF No. 1 at PageID.96-97).  Plaintiff then appeared before a district judge who informed Plaintiff that because she had agreed to plead guilty she was under arrest.  (ECF No. 1 at PageID.97).  The judge then instructed the bailiff to take Plaintiff into custody.  (ECF No. 1 at PageID.97).  Plaintiff alleges that following her unlawful arrest, she was unlawfully "confined at jail for several hours."  (ECF No. 1 at PageID.109).  While not entirely clear, it appears that this encounter concerned additional charges for malicious use of a telecommunications service brought against Plaintiff on January 13, 2016, based upon various communications Plaintiff made to tribal officials.  (ECF No. 30-10 at PageID.443-50; ECF No. 30-11 at PageID.451).

Plaintiff does not allege that this arrest was conducted by Defendants Wallin, Wheat, Cowell, or Leist or that Defendants in any way participated in such.  Likewise, Plaintiff does not allege that Defendants were in any way involved in her subsequent detention.  In response to the present motion, Plaintiff has neither presented nor identified any evidence that Defendants were responsible for or participated in her January 13, 2016 arrest and brief detention.  Accordingly, the undersigned recommends that Defendants Wallin, Wheat, Cowell, and Leist are entitled to summary judgment as to these claims.

-11-

C.    April 28, 2016

Plaintiff alleges that on April 28, 2016, she was unlawfully arrested by two unidentified police officers and subsequently detained for 30 days.   (ECF No. 1 at PageID.99, 108).   According to Plaintiff, she was arrested for contempt of court for failing to appear at a court-ordered competency examination.   (ECF No. 1 at PageID.99).   Plaintiff does not allege that this arrest was conducted by Defendants Wallin, Wheat, Cowell, or Leist or that Defendants in any way participated in such. Defendants have submitted evidence that this arrest was conducted by non-party K.R. Hansz.   (ECF No. 30-12 at PageID.456).   Likewise, Plaintiff does not allege that Defendants Wallin, Wheat, Cowell, or Leist had any involvement in her subsequent detention.   In response to the present motion, Plaintiff has neither presented nor identified any evidence that Defendants were responsible for or participated in her April 28, 2016 arrest or had any involvement in her subsequent detention. Accordingly, the undersigned recommends that Defendants Wallin, Wheat, Cowell, and Leist are entitled to summary judgment as to these claims.

D.    Incarceration for Six Months and Two Weeks

After being convicted of three counts of resisting, obstructing, and/or assaulting a police officer during the course of her May 23, 2015 arrest, Plaintiff was sentenced to serve nine months in jail. (ECF No. 30-9 at PageID.441).   Plaintiff alleges that based on her "good behavior," she was released after serving six months and two weeks of her nine month sentence.   (ECF No. 1 at PageID.101-02, 109).   Plaintiff claims that the time she served in jail for these convictions constitutes unlawful imprisonment.

As discussed in the following section, Plaintiff was charged with three counts of resisting, obstructing, and/or assaulting a police officer based on her behavior during her May 23, 2015 arrest.   A review of the video evidence recorded by the officers' body cameras reveals that there existed probable cause to charge Plaintiff with resisting, obstructing, and/or assaulting a police officer. *See* Mich. Comp. Laws § 750.81d.   Moreover, Plaintiff has not demonstrated that her conviction for these offenses was unlawful.   Accordingly, the undersigned recommends that Defendants Wallin, Wheat, Cowell, and Leist are entitled to summary judgment as to this claim.

Finally, Plaintiff asserts that the conduct which forms the basis of her false arrest and false imprisonment claims violates her Fourteenth Amendment right to due process.   (ECF No. 1 at PageID.113-15).   As discussed herein, the Fourth Amendment adequately protects against the alleged harms Plaintiff suffered.   Accordingly, Plaintiff's Due Process claims are not cognizable.   *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (where a particular Amendment "provides an explicit textual source of constitutional protection" against government behavior, that Amendment is the basis for assessing such claims).   Accordingly, the undersigned recommends that Defendants Wallin, Wheat, Cowell, and Leist are entitled to summary judgment as to Plaintiff's Due Process claims.

## IV.        Use of Excessive Force and Failure to Intervene

Plaintiff alleges that Defendant Wheat employed excessive force when effecting her arrest on May 23, 2015.   Plaintiff further alleges that Defendant Cowell violated her rights by failing to intervene to prevent Defendant Wheat from subjecting her to excessive force.

Claims that a police officer employed excessive force during the course of an arrest are analyzed under the Fourth Amendment's reasonableness standard.   *See Schreiber v. Moe*, 596 F.3d 323, 331-32 (6th Cir. 2010).   In determining whether an officer's use of force was reasonable, the

Court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 322. This assessment must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Moreover, the Court must "pay particular attention" to whether the suspect poses a threat to the officers and whether she is actively resisting arrest. *Ibid.*

In support of his motion for summary judgment, Defendant Wheat has submitted video evidence recorded by his and Defendant Cowell's body cameras. (ECF No. 30-6, Exhibit F). A review of this evidence reveals the following. Defendants Wheat and Cowell were both wearing clearly identifiable police uniforms, both Defendants identified themselves, and Plaintiff was clearly informed that Defendants had a warrant for her arrest. Plaintiff initially refused to exit her residence and only exited when Defendant Cowell began speaking with Plaintiff's stepson. At this point, Plaintiff approached Defendant Cowell screaming, "leave my son alone you motherfuckers."

Defendant Wheat then approached the group and instructed Plaintiff to place her hands on her head. Plaintiff did so, but when Defendant Cowell approached Plaintiff to handcuff her, Plaintiff began actively resisting and pulling away. Plaintiff then fell to the ground of her own accord at which point she was handcuffed. Defendant Wheat then began walking Plaintiff to his patrol vehicle at which point Plaintiff again began actively resisting and pulling away. Plaintiff then spat at Defendant Wheat, telling him to "go ahead and add that you cocksucker." Defendant Wheat regained control of Plaintiff, who immediately began resisting and pulling away, and escorted her to his police vehicle at which point he placed a spit mask over Plaintiff's face. Plaintiff was then placed into the patrol vehicle.

-14-

The video evidence reveals that Plaintiff's use of excessive force claim is without merit. Plaintiff has neither presented nor identified any evidence suggesting otherwise. Accordingly, the undersigned recommends that Defendant Wheat is entitled to summary judgment as to Plaintiff's use of excessive force. claim. Because Plaintiff cannot prevail on her use of excessive force claim, her claim that Defendant Cowell failed to prevent such likewise fails. *See Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013). Accordingly, the undersigned recommends that Defendant Cowell is entitled to summary judgment as to Plaintiff's failure to intervene claim.

## V.        Malicious Prosecution

Plaintiff asserts four separate claims of malicious prosecution. First, Plaintiff asserts that she was maliciously prosecuted for the crime of malicious use of a telecommunications service, based upon her voicemail messages to Sheriff Wallin. (ECF No. 1 at PageID.110). Plaintiff next alleges that she was maliciously prosecuted for obstructing, resisting, and/or assaulting a police officer during her May 23, 2015 arrest. (ECF No. 1 at PageID.110). Plaintiff alleges that her decision, on January 13, 2016, to plead guilty (presumably to additional charges of malicious use of a telecommunications service) was part of a conspiracy and constitutes malicious prosecution. (ECF No. 1 at PageID.110-11). The Court interprets Plaintiff's assertions as a claim that she was maliciously prosecuted for alleging using a telecommunications service to make threatening statements to tribal officials. Finally, Plaintiff alleges that she was maliciously prosecuted for contempt of court after failing to appear at a court-ordered competency examination.

To establish malicious prosecution, Plaintiff must establish the following elements: (1) a criminal prosecution was initiated against Plaintiff and Defendants made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a

consequence of the legal proceeding, Plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in Plaintiff's favor.  *See Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015).   Moreover, Plaintiff must demonstrate that Defendants acted with "some kind of blameworthiness, something beyond mere negligence or innocent mistake."  *Id.* at 655 ("even false testimony is not actionable as malicious prosecution unless deliberate - i.e., given with knowledge of, or reckless disregard for, its falsity").

With respect to the charges for malicious use of a telecommunications service, based upon her voicemail messages to Sheriff Wallin, as already discussed, there existed probable cause to charge Plaintiff.   While Plaintiff correctly notes that she was acquitted of those charges, such does not equate with a finding that there did not exist probable cause to initiate the prosecution.  *See, e.g., Newman v. Township of Hamburg*, 773 F.3d 769, 773 (6th Cir. 2014).

As for Plaintiff's claim that she was maliciously prosecuted for obstructing, resisting, and/or assaulting a police officer during her May 23, 2015 arrest, her conviction of these offenses defeats her malicious prosecution claim.   With respect to the charges for malicious use of a telecommunications service, based upon her communications to tribal officials, as well as her charge of contempt of court, Plaintiff has neither presented nor identified any evidence that Defendants Defendants Wallin, Wheat, Cowell, or Leist made, influenced, or participated in the decision to prosecute.   Accordingly, the undersigned recommends that Defendants Wallin, Wheat, Cowell, and Leist are entitled to summary judgment as to these claims.

## VI.    Deliberate Indifference

Plaintiff asserts two claims of deliberate indifference to her serious medical needs. First, Plaintiff alleges that following her May 23, 2015 arrest, Defendants Wheat and Cowell

disregarded her medical needs.   Plaintiff also alleges that while serving her sentence for obstructing, resisting, and/or assaulting a police officer, she was "forbidden to use her medicine from [her] traditional healer."   While Plaintiff's claims concern both pre-conviction and post-conviction conduct, the standard applicable to both is the familiar standard applicable to Eighth Amendment deliberate indifference claims.   *See Brown v. Chapman*, 814 F.3d 447, 465 (6th Cir. 2016).

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed.   *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976).   Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs."   *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps.   First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious.   A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."   *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need.   *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).   However, if the prisoner "has received on-going treatment for his condition and claims that this treatment was inadequate," he must demonstrate that his care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."   *Ibid.*

-17-

If the prisoner satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).   To satisfy this part of the analysis, the prisoner must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).

To the extent, however, that a prisoner simply disagrees with the treatment he received, or asserts that he received negligent care, summary judgment is appropriate. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

-18-

A.      May 23, 2015

Plaintiff concedes in her complaint that following her arrest, Defendants Wheat and Cowell arranged for her to be examined by EMS personnel after which she was transported to a local hospital for further evaluation.   (ECF No. 1 at PageID.92-94).   Defendants have submitted copies of the Report completed following Plaintiff's evaluation by emergency personnel.   (ECF No. 30-8 at PageID.438-39).   The results of this examination were unremarkable and the examining doctor concluded that Plaintiff "can be discharged to jail."   (ECF No. 30-8 at PageID.439).

Plaintiff argues that the care she received at the hospital was insufficient.   This argument fails for two reasons.   First, Plaintiff has neither presented nor identified any evidence to support this allegation.   More significantly, even if the Court assumes that hospital personnel violated Plaintiff's Eighth Amendment rights, such simply fails to implicate Defendants Wheat or Cowell as they did not treat Plaintiff.   Likewise, Plaintiff has neither presented nor identified evidence implicating Defendants Wheat or Cowell in the alleged treatment deficiencies she experienced. Accordingly, the undersigned recommends that Defendants Wheat and Cowell are entitled to summary judgment as to this claim.

B.      Emmet County Jail

Plaintiff asserts that during her incarceration in the Emmet County Jail, she was not permitted to use oregano oil to treat her heart condition and post-traumatic stress syndrome.   (ECF No. 1 at PageID.102).   Specifically, Plaintiff alleges that she requested to use her oregano oil, but "jail personnel" denied her requests.   Plaintiff's claim fails for two reasons.

First, Plaintiff's medical treatment records indicate that Plaintiff's request was denied because the oil Plaintiff requested to use was "brought in from outside" the jail and jail personnel

could not verify that the substance was, in fact, oregano oil.   (ECF No. 30-14 at PageID.460).   Thus, Plaintiff's claim is not that she was denied medical treatment, but rather that jail personnel refused Plaintiff's request to "treat" herself with a product which jail personnel could not identify.   Such does not violate the Eighth Amendment.   Plaintiff's claim fails, however, for a more fundamental reason. Plaintiff has neither presented nor identified evidence that the decision to deny her request to use oregano oil was made by Defendants Wallin, Wheat, Cowell, or Leist.   Accordingly, the undersigned recommends that Defendants Wallin, Wheat, Cowell, and Leist are entitled to summary judgment as to this claim.

**VII.        Illegal Search**

Plaintiff alleges that on a single occasion during her incarceration in the Emmet County Jail she was subjected to a strip search in violation of her Fourth Amendment rights.   (ECF No. 1 at PageID.113).   Assessing the constitutionality of a search conducted in a jail setting requires a balancing of three factors: (1) the scope, manner, and location of the search; (2) the need for the search; and (3) whether the search was reasonably related to legitimate penological interests by weighing the need against the invasion.   *See Sumpter v. Wayne County*, 868 F.3d 473, 482 (6th Cir. 2017).

First, Plaintiff's claim fails because she has neither presented nor identified evidence that Defendants Wallin, Wheat, Cowell, or Leist ordered or participated in the search in question. Furthermore, even if the Court overlooks this deficiency, the result is the same.   In her deposition, Plaintiff described the circumstances surrounding the search in question.   Plaintiff testified that on the date in question she was sitting with another inmate, Donna Idalski, who had in her possession illegal drugs which she smuggled into the jail following a weekend furlough.   (ECF No. 30-4 at PageID.404-05).   Once jail personnel realized that Idalski was in possession of illegal drugs, Plaintiff

was subjected to a strip search to make sure she did not also possess illegal drugs.   (ECF No. 30-4 at PageID.404-05).

While the Court recognizes that a strip search is invasive, Plaintiff has neither presented nor identified evidence that the search in question was unduly intrusive in terms of its scope, manner, or location.   The need for the search is apparent as jail officials have a legitimate interest in preventing inmates from possessing illegal drugs.   Finally, the search was reasonably related to this legitimate interest.   In sum, this search did not violate Plaintiff's Fourth Amendment rights.   *See, e.g., Florence v. Board of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 330-40 (2012).   Accordingly, the undersigned recommends that Defendants Wallin, Wheat, Cowell, and Leist are entitled to summary judgment as to this claim.

## VIII.        Violation of the Right to Free Speech

Plaintiff alleges that Defendants "prevented [her] from speaking out on matters of public concern."   It is not disputed that Plaintiff enjoys the right, protected by the First Amendment, to speak out on matters of public concern.   *See, e.g., Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011). Plaintiff's complaint contains no allegations that Defendants prevented Plaintiff from speaking out on matters of public concern.   More importantly, Plaintiff has neither presented nor identified evidence that Defendants impaired her right to speak out on matters of public concern.   Accordingly, the undersigned recommends that Defendants Wallin, Wheat, Cowell, and Leist are entitled to summary judgment as to this claim.

## IX.        Retaliation

Plaintiff alleges that Defendants "retaliated on Plaintiff for speaking out and criticizing [Defendants'] policies and practices."   (ECF No. 1 at PageID.107).   Plaintiff fails to specify,

however, what actions any Defendant undertook which constitute unlawful retaliation.   Instead, Plaintiff seems to allege that every allegedly improper action by each and every Defendant was undertaken for unlawful retaliatory reasons.

To prevail on her retaliation claims, Plaintiff must satisfy three elements: (1) she was engaged in constitutionally protected conduct; (2) a defendant took adverse action against her which would deter a person of ordinary firmness from continuing to engage in protected conduct; and (3) the adverse action was motivated by Plaintiff's protected conduct.   *See Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010).   Even if the Court assumes that Plaintiff can satisfy the first two elements, her retaliation claims fail because she cannot establish the requisite causal connection.

As the Supreme Court recently held, when alleging retaliation "it is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured – the motive must *cause* the injury.   Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."   *Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019).   As discussed herein, all of the actions by Defendants Wallin, Wheat, Cowell, and Leist were either lawful or simply resulted in no cognizable injury to Plaintiff.   Accordingly, the undersigned recommends that Defendants Wallin, Wheat, Cowell, and Leist are entitled to summary judgment as to this claim.

X.         **Infliction of Emotional Damage**

Plaintiff alleges that her "physical and psychological injuries. . .were caused by intentional, reckless, acts of the defendants [who] acted with maliciousness and intent to do harm to plaintiff causing anguish."   There does not exist under federal law a cause of action for infliction of emotional distress.   *See, e.g., McManaway v. KBR, Inc.*, 2015 WL 13310061 at *7 (S.D. Tex., Aug.

9, 2015); *Laning v. Doyle*, 2015 WL 710427 at *17 (S.D. Ohio, Feb. 18, 2015).   The Court, therefore, interprets Plaintiff's allegations as asserting a claim for intentional infliction of emotional distress (IIED) under Michigan law.

To prevail on this claim, Plaintiff must establish: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress.   *See Ghannam v. Weiss*, 2013 WL 3025143 at *1 (Mich. Ct. App., June 18, 2013).   In the context of an IIED claim, "extreme and outrageous conduct" has been defined as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."   *Yost v. Paychex, Inc.*, 1998 WL 1989811 at *16 (Mich. Ct. App., Sept. 29, 1998) (quoting Restatement Torts, 2d. § 46); *see also*, *Garretson v. City of Madison Heights*, 407 F.3d 789, 799 (6th Cir. 2005) (citing Michigan law).

Plaintiff has neither presented nor identified any evidence which any reasonable person could conclude satisfied this standard.   As detailed herein, Plaintiff has failed to present or identify evidence that any Defendant violated her rights let alone engaged in conduct which is "utterly intolerable in a civilized community."   Accordingly, the undersigned recommends that Defendants Wallin, Wheat, Cowell, and Leist are entitled to summary judgment as to this claim.

## XI.        Conspiracy

Finally, Plaintiff alleges that Defendants conspired to violate her rights in numerous ways.   (ECF No. 1 at PageID.113).   Plaintiff has failed to indicate whether this particular claim is grounded in federal or state law.   This is of no consequence, however, as Plaintiff's claim fails under either body of authority.   Under federal law, it is improper for "two or more persons" to conspire "for the purpose of depriving, either directly or indirectly," an individual of his civil rights.   42 U.S.C. §

1985.   Plaintiff's claim must fail, however, because as previously noted Plaintiff cannot establish that the alleged conspiracy deprived her of any right or privilege protected by the laws or Constitution of the United States.   *See Sawyer v. Lexington-Fayette Urban County Government*, 2001 WL 1006237 at *2 (6th Cir., Aug. 21, 2001) (citing *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996)).   Plaintiff's conspiracy claim also fails under Michigan law.   *See Karkoukli's, Inc. v. Walgreen Co.*, 2004 WL 435384 at *10-11 (Mich. Ct. App., Mar. 9, 2004) ("a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort").   Accordingly, the undersigned recommends that Defendants Wallin, Wheat, Cowell, and Leist are entitled to summary judgment as to this claim.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (ECF No. 30), be **granted** and this matter **terminated**.   The undersigned further recommends that appeal of this matter would not be taken in good faith.   *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: August 12, 2019

/s/ Ellen S. Carmody
ELLEN S. CARMODY
U.S. Magistrate Judge

-24-